**GRIFFIN HAMERSKY LLP**
Scott A. Griffin
Michael D. Hamersky
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone:    (646) 998-5580
Facsimile:    (646) 998-8284

*Counsel to the Debtor and*
*Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
In re:                                                      :    Chapter 11
                                                            :
HERB PHILIPSON'S ARMY AND NAVY                              :
STORES INC.,                                                :
                                                            :    Case No. 18-61376 (DD)
                              Debtor.[1]                    :
                                                            :
------------------------------------------------------------X

## CHAPTER 11 PLAN OF REORGANIZATION FOR HERB PHILIPSON'S ARMY AND NAVY STORES INC. DATED APRIL 8, 2019

---

[1]    The last four digits of the Debtor's federal tax identification number are 4814.

# TABLE OF CONTENTS

**Page Number**

| | | |
|---|---|---|
| **ARTICLE I.** | **DEFINITIONS AND INTERPRETATION** | **1** |
| **Section 1.1** | Definitions | 1 |
| **Section 1.2** | Rules of Interpretation | 8 |
| **Section 1.3** | Applications of Definitions and Rules of Construction Contained in the Bankruptcy Code | 9 |
| **Section 1.4** | Other Terms | 9 |
| **ARTICLE II.** | **CLASSIFICATION OF CLAIMS AND INTERESTS** | **9** |
| **Section 2.1** | Unclassified Claims—Administrative Claims, DIP Facility Claims, and Priority Tax Claims | 9 |
| **Section 2.2** | Criterion of Class | 9 |
| **Section 2.3** | Debtor Claims and Interests | 9 |
| **ARTICLE III.** | **IDENTIFICATION OF IMPAIRED CLAIMS AND INTERESTS UNDER THE PLAN** | **10** |
| **Section 3.1** | Impaired Classes of Claims | 10 |
| **Section 3.2** | Impairment Controversies | 10 |
| **ARTICLE IV.** | **PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN** | **10** |
| **Section 4.1** | Unclassified Claims | 10 |
| **Section 4.2** | Treatment of Administrative Claims | 10 |
| **Section 4.3** | Treatment of DIP Facility Claims | 12 |
| **Section 4.4** | Treatment of Priority Tax Claims | 12 |
| **ARTICLE V.** | **PROVISIONS FOR TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN** | **12** |
| **Section 5.1** | Treatment of Classified Claims and Interests | 12 |
| **Section 5.2** | Reservation of Rights Regarding Claims | 14 |
| **ARTICLE VI.** | **ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS** | **14** |
| **Section 6.1** | Classes Entitled to Vote | 14 |
| **Section 6.2** | Class Acceptance Requirement | 15 |
| **Section 6.3** | "Cramdown" | 15 |
| **ARTICLE VII.** | **IMPLEMENTATION OF THE PLAN** | **15** |
| **Section 7.1** | Plan Funding Mechanism | 15 |
| **Section 7.2** | Establishment of Reserves | 16 |
| **Section 7.3** | Corporate Action | 16 |
| **Section 7.4** | Creation of the Reorganized Debtor | 16 |
| **Section 7.5** | Closing of the Chapter 11 Case | 18 |
| **Section 7.6** | Dissolution of Committee | 18 |
| **Section 7.7** | Winding Down of Affairs | 18 |
| **Section 7.8** | The Powers and Duties of the Plan Administrator | 19 |
| **Section 7.9** | Compensation of Plan Professionals | 20 |
| **Section 7.10** | Appointment of the Plan Administrator | 20 |
| **Section 7.11** | Formation of the General Unsecured Creditor Trust | 20 |

| | | |
|---|---|---|
| **Section 7.12** | Powers and Duties of the General Unsecured Creditor Trustee | 21 |
| **Section 7.13** | Appointment of the General Unsecured Creditor Trustee | 23 |
| **Section 7.14** | Issuance of General Unsecured Creditor Trust Interests | 23 |
| **Section 7.15** | Distributions to Holders of Claims and Interests | 23 |
| **Section 7.16** | Distribution of General Unsecured Creditor Trust Assets | 26 |
| **Section 7.17** | Miscellaneous Distribution Provisions | 28 |
| **ARTICLE VIII.** | **EFFECT OF THE PLAN ON CLAIMS INTERESTS AND CAUSES OF ACTION** | **31** |
| **Section 8.1** | Binding Effect | 31 |
| **Section 8.2** | Term of Injunctions or Stays | 31 |
| **Section 8.3** | Preservation of Causes of Action | 31 |
| **Section 8.4** | Injunctions | 32 |
| **Section 8.5** | Exculpation | 33 |
| **Section 8.6** | Compromise of Controversies | 34 |
| **Section 8.7** | Releases by the Debtor | 34 |
| **Section 8.8** | Post-Confirmation Activity | 34 |
| **ARTICLE IX.** | **EXECUTORY CONTRACTS** | **35** |
| **Section 9.1** | Executory Contracts and Unexpired Leases | 35 |
| **Section 9.2** | Rejection Damages Bar Date | 35 |
| **Section 9.3** | Effect of Post-Confirmation Rejection | 35 |
| **ARTICLE X.** | **CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE** | **35** |
| **Section 10.1** | Conditions to Confirmation | 35 |
| **Section 10.2** | Conditions to Occurrence of Effective Date | 35 |
| **Section 10.3** | Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date | 36 |
| **ARTICLE XI.** | **CONFIRMABILITY AND SEVERABILITY OF THE PLAN** | **36** |
| **ARTICLE XII.** | **ADMINISTRATIVE PROVISIONS** | **36** |
| **Section 12.1** | Retention of Jurisdiction | 36 |
| **Section 12.2** | Governing Law | 38 |
| **Section 12.3** | Effectuating Documents, Further Transactions | 38 |
| **Section 12.4** | Waiver of Bankruptcy Rules 3020(e) and 7062 | 38 |
| **Section 12.5** | No Admissions | 38 |
| **Section 12.6** | Headings | 39 |
| **Section 12.7** | Payment of Statutory Fees | 39 |
| **Section 12.8** | Governmental Carve-Out | 39 |
| **Section 12.9** | Disposal of Books and Records | 39 |
| **Section 12.10** | Amendments | 39 |
| **Section 12.11** | Successors and Assigns | 40 |
| **Section 12.12** | Confirmation Order and Plan Control | 40 |
| **Section 12.13** | Further Action | 40 |
| **Section 12.14** | Exhibits | 40 |
| **Section 12.15** | Notices | 40 |
| **Section 12.16** | Substantial Consummation | 41 |
| **Section 12.17** | Deemed Acts | 41 |

## INTRODUCTION

Herb Philipson's Army and Navy Stores Inc., as debtor and debtor in possession (the "Company" or the "Debtor"), proposes the following plan of reorganization pursuant to section 1121 of the Bankruptcy Code. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. A detailed discussion of the Debtor's history, business, and other pertinent information, as well as a summary and analysis of the Plan, are set forth in the Disclosure Statement filed contemporaneously herewith. Any agreements and documents, which are referenced in the Plan and/or Disclosure Statement and are incorporated as if set forth in full therein will be filed with the United States Bankruptcy Court for the Northern District of New York.

SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019 AND THIS PLAN, THE PLAN PROPONENT, IN CONSULTATION WITH THE COMMITTEE, RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.

## ARTICLE I.          DEFINITIONS AND INTERPRETATION

### Section 1.1      Definitions

The following terms, when used in this Plan, the Disclosure Statement (except as otherwise provided therein) or any subsequent amendments or modifications thereof, and in addition to those terms defined in the text of the Plan, shall have the respective meanings hereinafter set forth.

1.01    "Administrative Claim" means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the Debtor's business; (b) Professional Fee Claims, (c) Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code, (d) United States Trustee Fees, and (e) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

1.02    "Administrative Claims Bar Date" means the date that is thirty (30) days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.

1.03    "Administrative Claims Fund" means a fund to be established by the Debtor on the Effective Date, and administered thereafter by the General Unsecured Creditor Trustee, in an amount sufficient to pay Allowed Administrative Claims (including Professional Fee Claims) and Allowed Priority Tax Claims.

1.04    "Allowed" with respect to a Claim, means the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by a Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of

the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such Claim has been allowed); (d) determined to be valid by the General Unsecured Creditor Trustee; or (e) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order, after notice and a hearing. A proof of Claim that is not timely filed (or not deemed timely filed) shall not be "Allowed" for purposes of distribution or voting under the Plan.

1.05    "Assets" means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

1.06    "Available Cash" means, (i) the Debtor's Cash on hand as of the Effective Date; (ii) any Cash Distributions held in the Disputed Claims Reserve for the benefit of a holder of a Disputed Claim, which is subsequently Disallowed, or reclassified, in whole or in part; (ii) any *de minimis* Distributions; (iii) any amount represented by an undeliverable Distribution; or (iv) any voided checks.

1.07    "Aviva Philipson Loan Document" means the Secured Promissory Note executed by and between Aviva Philipson, as Lender, and the Debtor, as Borrower, on March 21, 2018.

1.08    "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Chapter 11 Case concerning the Debtor.

1.09    "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of New York or such other court having jurisdiction over the Chapter 11 Case.

1.10    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, in effect and applicable to the Chapter 11 Case.

1.11    "Bar Date" means (i) April 6, 2019, the date fixed by the Bankruptcy Court as the last date by which all Persons and entities must have filed proofs of claim against the Debtor and (ii) April 6, 2019, the date fixed by the Bankruptcy Court as the last date by which all governmental entities must have filed proofs of claim against the Debtor, unless the Bankruptcy Court has set a different date by which a specific Creditor must file a proof of Claim, in which case it means, for the specific Creditor, such different date set by the Bankruptcy Court in the order approving such Bar Date or otherwise.

1.12    "Business Day" means any day other than a Saturday, Sunday or other day on which commercial banks in New York City are required or authorized by law to be closed.

1.13    "Cash" means cash and cash equivalents in U.S. dollars.

1.14    "Causes of Action" means any and all Claims, rights, actions, choses in action, suits, causes of action, Liens, judgments and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to, or after, the Petition Date and in each case whether known or unknown, in law,

equity or otherwise, including, without limitation, receivables and those Claims and actions to avoid or recover pre-petition or post-petition transfers of money or property pursuant to applicable bankruptcy and non-bankruptcy law (including rights and remedies arising under chapter 5 of the Bankruptcy Code).

1.15    "Chapter 11 Case" means the case commenced by the Debtor on October 8, 2018 under chapter 11 of the Bankruptcy Code, administered under case number 18-61376 (DD).

1.16    "Claim" means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.17    "Class" means a category of Claims or Interests described in Article II hereof.

1.18    "Collateral" means any property or interest in property of the Estate subject to an unavoidable Lien to secure the payment or performance of a Claim.

1.19    "Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code by the United States Trustee on October 19, 2018.

1.20    "Confirmation" means the Bankruptcy Court's confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code.

1.21    "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket corresponding to the Chapter 11 Case.

1.22    "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider Confirmation.

1.23    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan, or any amendment thereto, pursuant to section 1129 of the Bankruptcy Code, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

1.24    "Convenience Claim" means a Claim that is a general unsecured claim against the Debtor that has a face amount less than or equal to one-thousand dollars ($1,000.00).

1.25    "Creditor" means any Person who: (a) holds a Claim against the Debtor that arose prior to the Petition Date; (b) holds a Claim against the Debtor, which arose after the Petition Date, other than an Administrative Claim of the type specified in Bankruptcy Code section 503(b); or (c) holds a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

1.26    "DIP Credit Agreement" means that certain $3,000,000.00 Super Senior Secured Postpetition Financing Agreement dated as of April [_], 2019, by and among the Debtor, as borrower, and the DIP Lender, as lender.

1.27    "DIP Facility" means that certain $3,000,000.00 asset-based lending facility available to the Debtor pursuant to the DIP Credit Agreement.

1.28    "DIP Facility Claim" means a Claim by the DIP Lender under the DIP Credit Agreement and the DIP Order that upon the Effective Date shall be an Allowed Administrative Claim.

1.29    "DIP Lender" means Crossroads Financial, LLC.

1.30    "DIP Order" means, collectively, the order(s) of the Bankruptcy Court approving the DIP Credit Agreement, authorizing the Debtor to enter into the DIP Credit Agreement, granting certain rights, protections and liens to and for the benefit of the DIP Lender as set forth therein, and authorizing the Debtor to make borrowings from the DIP Facility under the DIP Credit Agreement.

1.31    "Disallowed" means, when referring to a Claim or Interest, a Claim (including a claim listed by the Debtor in its Schedules) or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

1.32    "Disclosure Statement" means the disclosure statement, and all exhibits, annexed thereto, filed in connection with the Chapter 11 Case pursuant to section 1125 of the Bankruptcy Code, and approved by the Bankruptcy Court as containing adequate information as that term is defined in section 1125(a)(1) of the Bankruptcy Code, as may be amended or modified from time to time by any duly authorized amendment or modification.

1.33    "Disputed Claim" means a Claim that is not an Allowed Claim nor a disallowed Claim, and is any Claim, proof of which was filed, or an Administrative Claim or other unclassified Claim, which is the subject of a dispute under the Plan or as to which Claim the Debtor, the Plan Administrator, or the General Unsecured Creditor Trustee, as applicable, has interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed (or deemed timely or properly filed).

1.34    "Disputed Claims Reserve" means an appropriate reserve, to be established by the Debtor, in consultation with the Committee, and administered by the Plan Administrator and/or the General Unsecured Creditor Trustee, as applicable.

1.35    "Distribution" means any distribution made pursuant to the terms of this Plan.

1.36    "Distribution Address" means the address set forth in the applicable proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). If no proof of claim is or has been filed with respect to a particular Claim, "Distribution Address" means the address

set forth in the Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

1.37    "Distribution Date" means any date on which a Distribution is made to holders of Allowed Claims under this Plan, or as otherwise agreed.  The first Distribution shall occur on or as soon as practicable after the Effective Date or as otherwise agreed by the Debtor, the Committee, the Plan Administrator, and the General Unsecured Creditor Trustee, as applicable.  To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Plan Administrator and/or the General Unsecured Creditor Trustee, as applicable, shall determine.

1.38    "Effective Date" means a Business Day, selected by the Plan Proponent, on which all conditions to the Effective Date have been satisfied or, if permitted, waived by the Plan Proponent, in consultation with the Committee, and on which no stay of the Confirmation Order shall be pending.

1.39    "Encumbrances" means, collectively, any and all security interests, Liens, pledges, Claims, levies, charges, escrows, encumbrances, options, rights of first refusal, transfer restrictions, conditional sale contracts, title retention contracts, mortgages, hypothecations, indentures, security agreements or other agreements, arrangements, contracts, commitments, understandings or obligations of any kind whatsoever, whether written or oral.

1.40    "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Petition Date.

1.41    "Exit Financing" means a senior secured credit facility in such amount that will be agreed upon between the DIP Lender and the Debtor.

1.42    "Fee Claim Deadline" means the deadline for all Professionals or other Persons to file an application for final allowance of compensation and reimbursement of Professional Fee Claims for services rendered before the Effective Date, which deadline shall be the date which is forty-five (45) days after the Effective Date.

1.43    "Fee Application" means the final fee application and/or an application for payment of reasonable fees and expenses filed under section 503(b) of the Bankruptcy Code by any parties seeking payment of Professional Fee Claims and/or reimbursement of expenses, as applicable, which shall be filed in accordance with Section 4.2(c)(ii) hereof.

1.44    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending;  provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules

of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.45    "Gary L. Philipson Loan Document" means the Secured Promissory Note executed by and between Gary L. Philipson, as Lender, and the Debtor, as Borrower, on March 21, 2018.

1.46    "General Unsecured Claim" a Claim that is not an Administrative Claim, a DIP Facility Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Convenience Claim.

1.47    "General Unsecured Creditor Funding Reserve" means $[•] of Available Cash.

1.48    "General Unsecured Creditor Interests" means interests in the General Unsecured Creditor Trust allocable to the holders of Allowed General Unsecured Claims (and any successors, transferees, or assigns thereof).

1.49    "General Unsecured Creditor Trust" means the trust established pursuant to the Plan and in accordance with the General Unsecured Creditor Trust Agreement.

1.50    "General Unsecured Creditor Trust Agreement" means the agreement between the Debtor, the Plan Administrator, and the General Unsecured Creditor Trustee as agreed to by the Committee pursuant to the Confirmation Order, as the same may be amended from time to time in accordance with its terms and filed as part of the Plan Supplement and approved pursuant to the Confirmation Order.

1.51    "General Unsecured Creditor Trust Assets" means all Assets of the General Unsecured Creditor Trust as set forth in the General Unsecured Creditor Trust Agreement.

1.52    "General Unsecured Creditor Trustee" means [To Be Determined].

1.53    "Impaired" means any Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.54    "Interest" means the rights and interests as of the Petition Date of any Person in the Debtor.

1.55    "Lien" means any charge against, security interest in, Encumbrance upon, or other interest in property to secure payment of a debt or performance of an obligation.

1.56    "New Equity" means equity interests in the Reorganized Debtor.

1.57    "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other entity.

1.58    "Petition Date" means October 8, 2018, the date the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6

1.59    "Philipson Loan Documents" means the Gary L. Philipson Loan Document and the Aviva Philipson Loan Document.

1.60    "Plan" means this plan of reorganization and any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized amendment or modification.

1.61    "Plan Administrator" means [To Be Determined].

1.62    "Plan Proponent" means the Debtor.

1.63    "Plan Supplement" means the General Unsecured Creditor Trust Agreement and any other documents, agreements, schedules, and exhibits, specified in this Plan, to be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline, provided that the Debtor may amend such Plan Supplement at any time prior to the Confirmation Hearing upon consultation with the Committee.

1.64    "Priority Tax Claim" means a Claim or a portion of a Claim, which is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.65    "Pro Rata" means, at any time, the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular Class at such time, including Disputed Claims at such time (a) as calculated by the Plan Administrator and/or the General Unsecured Creditor Trustee, as applicable, on or before any Distribution Date; or (b) as determined or estimated by the Bankruptcy Court.

1.66    "Professionals" means an entity (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.67    "Professional Fee Claims" means any Claim of (a) a Professional, retained in the Chapter 11 Case, pursuant to sections 327, 363 or 1103 of the Bankruptcy Code and/or members of the Committee, for compensation or reimbursement of costs and expenses relating to services incurred in their capacity as a member of the Committee after the Petition Date, but prior to and including the Effective Date, when and to the extent any such Claim is Allowed by the Bankruptcy Court pursuant to sections 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code, or (b) a Person seeking compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

1.68    "Released Party" means each of the following in its capacity as such, and only in its capacity as such: (a) the Debtor's Professionals, officers, trustees, employees (acting in such capacity), directors and (b) the Committee, the members thereof and the Committee's Professionals.

1.69    "Reorganized Debtor" means the Debtor as reorganized upon the Effective Date of the Plan.

1.70    "Reorganized Debtor Assets" means any all assets retained by Debtor upon the Effective Date, other than Available Cash.

1.71    "Reorganized Debtor Liabilities" means those liabilities specifically assumed by the Reorganized Debtor pursuant to Section 7.4.b.iii of the Plan.

1.72    "Schedules" means the Statement of Financial Affairs for Herb Philipson's Army and Navy Stores Inc. [Docket No. 119] and the Schedules of Assets and Liabilities for Herb Philipson's Army and Navy Stores Inc. [Docket No. 120] filed by the Debtor with the Bankruptcy Court on October 19, 2018, the amended Schedules of Assets and Liabilities for Herb Philipson's Army and Navy Stores Inc. [Docket No. 226] filed by the Debtor with the Bankruptcy Court on December 26, 2018, and any further amendments thereto.

1.73    "Second Avenue" means Second Avenue Capital Partners LLC

1.74    "Second Avenue Credit Facility" means the asset-based lending facility available to the Debtor pursuant to the Loan and Security Agreement executed by and between Second Avenue, as Lender, and the Debtor, as borrower, on July 31, 2018.

1.75    "Secured Claim" means a Claim (i) arising under the Philipson Loans, (ii) secured by a Lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

1.76    "Secured Creditors" means Gary L. Philipson, Aviva Philipson, and others holding Secured Claims.

1.77    "United States Trustee" means any and all representatives and employees of the Office of the United States Trustee for the Northern District of New York.

1.78    "United States Trustee Fees" means all fees and charges assessed against the Estate by the United States Trustee and due pursuant to section 1930 of title 28 of the United Sates Code.

1.79    "Unclassified Claims" means Administrative Claims, DIP Facility Claims, and Priority Tax Claims.

**Section 1.2    Rules of Interpretation**

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender.  The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

### Section 1.3    Applications of Definitions and Rules of Construction Contained in the Bankruptcy Code

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

### Section 1.4    Other Terms

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

### ARTICLE II.    CLASSIFICATION OF CLAIMS AND INTERESTS

### Section 2.1    Unclassified Claims—Administrative Claims, DIP Facility Claims, and Priority Tax Claims

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims, and Priority Tax Claims shall not be classified under the Plan and shall instead be treated separately as Unclassified Claims on the terms set forth in Article IV of the Plan.

### Section 2.2    Criterion of Class

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class and is in a different Class to the extent that the remainder of the Claim qualifies within the description of the different Class.

### Section 2.3    Debtor Claims and Interests

The Classes of Claims against and Interests in the Debtor shall be:

    (a)    Class 1—Secured Claims

The Class 1 Claims shall consist of the Secured Claims against the Debtor.

    (b)    Class 2—General Unsecured Claims

The Class 2 Claims shall consist of the General Unsecured Claims against the Debtor that have a face amount greater than one-thousand dollars ($1,000.00).

    (c)    Class 3—Convenience Claims

The Class 3 Claims shall consist of the general unsecured claims against the Debtor that have a face amount of less than or equal to one-thousand dollars ($1,000.00).

    (d)    Class 4—Interests

The Class 4 Interests shall consist of all Interests in the Debtor.

**ARTICLE III.          IDENTIFICATION OF IMPAIRED
                        CLAIMS AND INTERESTS UNDER THE PLAN**

**Section 3.1     Impaired Classes of Claims**

Class 1—Secured Claims, Class 2—General Unsecured Claims, and Class—4 Interests are Impaired under the Plan. Class 3—Convenience Claims are not Impaired under the Plan.

**Section 3.2     Impairment Controversies**

If a controversy arises as to whether any Claim or Interest, or any Class of Claims or Interests, is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

**ARTICLE IV.          PROVISIONS FOR TREATMENT OF
                        UNCLASSIFIED CLAIMS UNDER THE PLAN**

**Section 4.1     Unclassified Claims**

As set forth below, the Administrative Claims and Priority Tax Claims shall be treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.

**Section 4.2     Treatment of Administrative Claims**

(a)     _Allowance of Administrative Claims/Professional Fee Claims_

An Administrative Claim is defined in the Plan and means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (a) the actual and necessary postpetition costs and expenses incurred by the Debtor in preserving the Estate or operating its business, (b) Professional Fee Claims, (c) Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code, (d) United States Trustee Fees, and (e) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

(b)     _Payment of Allowed Administrative Claims_

Subject to the Bar Date and other provisions in the Plan and except to the extent the Debtor, the Plan Administrator, or the General Unsecured Creditor Trustee, as applicable, and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.  Allowed Administrative Claims shall be paid from the funds in the Administrative Claims Fund.

(c)     <u>Administrative Bar Date</u>

    (i)     <u>General Provisions</u>.  Except as provided below for (i) Professionals requesting compensation or reimbursement for Professional Fee Claims, and (ii) United States Trustee Fees, requests for payment of Administrative Claims must be filed no later than thirty (30) days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.  Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the Administrative Claims Bar Date, shall be forever barred from asserting such Claims against the Debtor or their respective property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

    (ii)    <u>Professionals</u>. All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than the Fee Claim Deadline. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than twenty-one (21) days after any such application is filed.  All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid by the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, to the applicable Professional or other entities requesting compensation or reimbursement of Professional Fee Claims as soon as is practicable after any such Professional Fee Claims are Allowed.  Each Professional or other Person that intends to seek payment on account of a Professional Fee Claim shall provide the Debtor with a statement, by no later than three (3) days after entry of the Confirmation Order, of the amount of estimated unpaid fees and expenses accrued by such Professional up to the date of such statement, the amount of fees and expenses that each such Professional expects to incur from such date through the Effective Date, and the amount of fees and expenses that each such Professional expects to incur from such date in connection with the preparation and prosecution of each such Professional's Fee Application. For the avoidance of doubt, the estimate included in such statement shall not be a cap and any amount that exceeds the estimate shall still be treated as a Professional Fee Claim payable to such Professional.

(iii)  <u>United States Trustee Fees</u>. The Debtor, the Plan Administrator, or the General Unsecured Creditor Trustee, as applicable, shall pay all applicable United States Trustee Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters a final decree closing the Chapter 11 Case.

**Section 4.3    Treatment of DIP Facility Claims**

The DIP Facility Claims shall be Allowed Claims on the Effective Date and shall be paid in Cash in full on the Effective Date, except to the extend a holder of a DIP Facility Claim agrees to some other or less favorable treatment in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Facility Claim.  Notwithstanding anything to the contrary herein, on the Effective Date, in full and final satisfaction of all claims arising under the DIP Facility, all amounts owed under the DIP Facility shall be replaced, secured, and cash collateralized, as applicable, by amounts available under the Reorganized Debtor's Exit Financing.

**Section 4.4    Treatment of Priority Tax Claims**

Priority Tax Claims are claims of a kind specified in section 507(a)(8) of the Bankruptcy Code. Except to the extent the Debtor, the Plan Administrator, or the General Unsecured Creditor Trustee, as applicable, and the holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, at its sole option, shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

As of the filing of this Plan, an aggregate amount of $114.14 in Priority Tax Claims has been asserted against the Debtor.

**ARTICLE V.    PROVISIONS FOR TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN**

**Section 5.1    Treatment of Classified Claims and Interests**

The Classes of Claims against and Interests in the Debtor shall be treated under the Plan as follows:

(a)  <u>Class 1—Secured Claims</u>

Secured Claims consist of all Claims (i) arising under the Philipson Loans and (ii) that are secured by a Lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

Holders of Claims in Class 1 are Impaired. Each holder of a Secured Claim is not conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

Provided that the holder of a Class 1 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 1 that were Disputed Claims on the Effective Date and have thereafter become Allowed Secured Claims, immediately following the date upon which such Claims became Allowed Secured Claims, or as soon thereafter as is practicable, holders of each such Allowed Secured Claim shall receive (a) a cash payment equal to five-percent (5%) of such Claim and thereafter (i) on the first anniversary of the Effective Date, a cash payment equal to twenty-percent (20%) of the then-remaining balance of such Claim, (ii) on the second anniversary of the Effective Date, a cash payment equal to twenty-five-percent (25%) of the then-remaining balance of such Claim, (iii) on the third anniversary of the Effective Date, a cash payment equal to thirty-three-percent (33%) of the then-remaining balance of such Claim, (iv) on the fourth anniversary of the Effective Date, a cash payment equal to fifty-percent (50%) of the then-remaining balance of such Claim, and (iv) on the fifth anniversary of the Effective Date, a cash payment equal to one-hundred-percent (100%) of the then-remaining balance of such Claim in full and final satisfaction of such Claim, or (b) such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed Secured Claim; *provided, however,* each holder of an Allowed Secured Claim shall be granted a valid, perfected, and enforceable Lien on the Assets of the Reorganized Debtor in the amount of such Holder's Allowed Secured Claim.

      (b)    <u>Class 2—General Unsecured Claims</u>

General Unsecured Claims consist of any Claim that is not an Administrative Claim, a DIP Facility Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Convenience Claim.

Holders of Claims in Class 2 are Impaired. Each holder of a General Unsecured Claim is not conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

Provided that the holder of a Class 2 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 2 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, holders of each such Allowed General Unsecured Claim shall, in exchange for the provision of payment terms to the Reorganized Debtor pari passu to those extended to the Debtor before the Petition Date, receive (a) a cash payment equal to five-percent (5%) of such Claim and thereafter (i) on the first anniversary of the Effective Date, a cash payment equal to twenty-percent (20%) of the then-remaining balance of such Claim, (ii) on the second anniversary of the Effective Date, a cash payment equal to twenty-five-percent (25%) of the then-remaining balance of such Claim, (iii) on the third anniversary of the Effective Date, a cash payment equal to thirty-three-percent (33%) of the then-remaining balance of such Claim, (iv) on the fourth anniversary of the Effective Date, a cash payment equal to fifty-percent (50%) of the then-remaining balance of such Claim, and (iv) on the fifth anniversary of the Effective Date, a cash payment equal to one-hundred-percent (100%) of the then-remaining

balance of such Claim in full and final satisfaction of such Claim, or (b) such other treatment as may be agreed upon by the General Unsecured Creditor Trustee and the holder of such Allowed General Unsecured Claim.

(c)    Class 3—Convenience Claims

Convenience Claims consist of Claims that are general unsecured claims against the Debtor that have a face amount less than or equal to one-thousand dollars ($1,000.00).

Holders of Allowed Claims in Class 3 are Unimpaired under the Plan. Each holder of an Allowed Convenience Claim is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

Provided that the holder of a Class 3 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 3 that were Disputed Claims on the Effective Date and have thereafter become Allowed Convenience Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed Convenience Claims, or as soon thereafter as is practicable, holders of each such Allowed Convenience Claim shall receive a cash payment equal to the face amount of such Allowed Convenience Claim up to a maximum of one-thousand dollars ($1,000.00).

(d)    Class 4—Interests

Class 4 Interests are Impaired. The holders of Class 4 Interests will receive no Distribution. On the Effective Date, all Class 4 Interests will be deemed canceled, null and void and of no force and effect. The holders of Class 4 Interests are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

**Section 5.2    Reservation of Rights Regarding Claims.**

Except as otherwise explicitly provided in the Plan, nothing shall affect, as applicable, the Debtor, the Plan Administrator, or the General Unsecured Creditor Trustee's rights, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoff or recoupment.

**ARTICLE VI.       ACCEPTANCE OR REJECTION OF THE PLAN;
EFFECT OF REJECTION BY ONE OR MORE CLASSES OF
CLAIMS OR INTERESTS**

**Section 6.1    Classes Entitled to Vote**

Class 1—Secured Claims and Class 3—Convenience Claims, which are unimpaired, and the Holders of which are conclusively deemed to accept the Plan are not entitled to vote to accept or reject the Plan.

Class 4—Interests, which are impaired, and the Holders of which are conclusively deemed to reject the Plan are not entitled to vote on the Plan.

Class 2—General Unsecured Claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

### Section 6.2    Class Acceptance Requirement

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

### Section 6.3    "Cramdown"

If all applicable requirements for Confirmation are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), the Bankruptcy Court may confirm the Plan on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims that is impaired thereunder, and has not accepted the Plan.

## ARTICLE VII.        IMPLEMENTATION OF THE PLAN

### Section 7.1    Plan Funding Mechanism

The Plan shall be funded from the Debtor's Cash on hand as of the Effective Date, including a portion of the Reorganized Debtor's available Exit Financing specifically set aside for the Plan, and such funds will be transferred to the Administrative Claims Fund, the General Unsecured Claims Fund, the Disputed Claims Reserve, and the General Unsecured Trust Reserve, to be overseen by the Plan Administrator and/or the General Unsecured Creditor Trustee, as applicable, for the satisfaction of Allowed Claims.

Thereafter:

- On the first anniversary of the Effective Date, the Reorganized Debtor will transfer an amount in cash equal to twenty percent (20%) of the then-remaining Allowed General Unsecured Claims into the General Unsecured Creditor Trust, for distribution to Holders of Allowed General Unsecured Claims pursuant to the Plan;

- On the second anniversary of the Effective Date, the Reorganized Debtor will transfer an amount in cash equal to twenty-five percent (25%) of the then-remaining Allowed General Unsecured Claims into the General Unsecured Creditor Trust, for distribution to Holders of Allowed General Unsecured Claims pursuant to the Plan;

- On the third anniversary of the Effective Date, the Reorganized Debtor will transfer an amount in cash equal to thirty-three percent (33%) of the then-remaining Allowed

General Unsecured Claims into the General Unsecured Creditor Trust, for distribution to Holders of Allowed General Unsecured Claims pursuant to the Plan;

- On the fourth anniversary of the Effective Date, the Reorganized Debtor will transfer an amount in cash equal to fifty percent (50%) of the then-remaining Allowed General Unsecured Claims into the General Unsecured Creditor Trust, for distribution to Holders of Allowed General Unsecured Claims pursuant to the Plan; and

- On the fifth anniversary of the Effective Date, the Reorganized Debtor will transfer an amount in cash equal to one-hundred percent (100%) of the then-remaining Allowed General Unsecured Claims into the General Unsecured Creditor Trust, for distribution to Holders of Allowed General Unsecured Claims pursuant to the Plan.

**Section 7.2      Establishment of Reserves**

At least three (3) days prior to the Confirmation Hearing, the Debtor shall file with the Bankruptcy Court a notice that reflects the proposed amounts of the Administrative Claims Fund, the General Unsecured Claims Fund, the Disputed Claims Reserve, and the General Unsecured Trust Reserve.

**Section 7.3      Corporate Action**

The Plan will be administered by the Plan Administrator and all actions taken under the Plan in the name of the Debtor shall be taken through the Plan Administrator; *provided, however,* that the General Unsecured Creditor Trustee shall administer the General Unsecured Trust Assets contemplated under the Plan pursuant to the General Unsecured Trust Agreement.  Upon the Distribution of all Assets pursuant to the Plan and the filing by the Plan Administrator and the General Unsecured Creditor Trustee, as applicable to the General Unsecured Trust Assets, of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; *provided, however*, that the Debtor may, but will not be required to, take appropriate action to dissolve under applicable law.

**Section 7.4      Creation of the Reorganized Debtor**

On the Effective Date, the Reorganized Debtor will be incorporated in the state of New York and funded pursuant to the Exit Financing Agreement.  The Reorganized Debtor will serve as the operating entity of the Debtor's former business and on the Effective Date, the Debtor will transfer to the Reorganized Debtor all of its assets other than the General Unsecured Creditor Trust Assets. **EXCEPT AS PROVIDED FOR HEREIN, THE REORGANIZED DEBTOR SHALL NOT OTHERWISE INCUR OR HAVE ANY LIABILITY, CLAIM OR OBLIGATION**

16

**BASED ON ANY ACT, OMISSION, TRANSACTION OR EVENT OCCURRING ON OR PRIOR TO THE EFFECTIVE DATE, AS A SUCCESSOR TO THE DEBTOR OR OTHERWISE.**

      (a)    <u>Corporate Governance</u>

Prior to the Effective Date, a three member board of directors (the "Board") shall be formed for the Reorganized Debtor, consisting of (i) one member selected by holders of Allowed Secured Claims, (ii) one member selected by the Committee or General Unsecured Creditor Trustee, as applicable, and (iii) Guy Viti; provided, however, that (x) the holders of Allowed Secured Claims shall only be permitted to select and appoint a member of the Reorganized Debtor's Board until all Allowed Secured Claims are satisfied in full pursuant to the Plan and (y) the Committee or General Unsecured Creditor Trustee, as applicable, shall only be permitted to select and appoint a member of the Reorganized Debtor's Board until al Allowed General Unsecured Claims are satisfied in full pursuant to the Plan.

Guy Viti shall serve as the president and chief executive officer of the Reorganized Debtor beginning on the Effective Date unless otherwise determined by a majority of the Reorganized Debtor's Board.

      (b)    <u>Transfer of Assets and Assumption of Liabilities</u>

          (i)        Transfer of Assets

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtor will transfer to the Reorganized Debtor the Reorganized Debtor Assets.

          (ii)        Assumption of Liabilities

On the Effective Date, the Reorganized Debtor shall assume the following Reorganized Debtor Liabilities:

- all "Gift-Cards" issued by the Debtor and all "customer programs" maintained by the Debtor prior to the Petition Date in accordance with the Bankruptcy Court's Order related to same [Docket No 190]; and

- all lease obligations for (i) the Liverpool Store, (ii) the Watertown Store, (iii) the Oneida Store (subject to Bankruptcy Court Approval, (iv) the New Hartford Store (subject to Bankruptcy Court Approval), (v) the Herkimer Store (subject to Bankruptcy Court Approval), and (vi) such other Unexpired Leases that may be assumed by the Debtor.

      (c)    <u>Equity in the Reorganized Debtor</u>

          (i)        Reservation of Equity

One-hundred percent (100%) of equity interests in the Reorganized Debtor ("New Equity") shall be reserved for Guy Viti; *provided, however,* that on the Effective Date, such New Equity shall be transferred to the General Unsecured Trust until all Allowed Claims are satisfied pursuant to the Plan. Upon full and final satisfaction of all Allowed Claims, all New Equity shall be delivered to Guy Viti.

(ii)    Payment Default

Should at any time after the Effective Date, the Reorganized Debtor fails to make payments to the General Unsecured Creditor Trust pursuant to the Plan (a "Post-Effective Date Funding Default"), the General Unsecured Creditor Trustee shall notify the Reorganized Debtor in writing of such Post-Effective Date Funding Default (a "Post-Effective Date Funding Default Notice"). Upon receipt of a Post-Effective Date Funding Default Notice, the Reorganized Debtor shall have fifteen (15) Business Days to cure such Post-Effective Date Funding Default (the "Cure Period"). If the Reorganized Debtor fails to cure the Post-Effective Date Funding Default in the Cure Period, the General Unsecured Creditor Trustee may (i) sell or otherwise liquidate the Reorganized Debtor's assets, including the New Equity, for the benefit of Holders of Allowed General Unsecured Claims pursuant to the terms of the General Unsecured Creditor Trust Agreement *or* (ii) modify the Plan Funding Mechanism outlined in Section 7.1 for the benefit of Holders of Allowed General Unsecured Claims pursuant to the terms of the General Unsecured Creditor Trust Agreement without further order of the Bankruptcy Court *and* continue to hold such New Equity in trust until all Allowed Claims are paid in full pursuant to the Plan.

**Section 7.5    Closing of the Chapter 11 Case**

After all Disputed Claims filed against the Debtor have become Allowed Claims or have been Disallowed, and all Allowed Claims have been paid in Cash in full or satisfied pursuant to an agreement between the holder of such Allowed Claim and the Plan Administrator, or at such earlier time as the Plan Administrator, in consultation with the General Unsecured Creditor Trustee, deems appropriate, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**Section 7.6    Dissolution of Committee**

On the Effective Date, the Committee, to the extent not already dissolved or otherwise disbanded, shall be dissolved and the members of the Committee will be released and discharged from all duties and obligations arising from or related to the Bankruptcy Case, except for the purpose of: (x) any appeal or request for reconsideration, stay pending appeal, other disputes, or litigation regarding the Plan or the Confirmation Order; (y) filing any outstanding Fee Applications, including, but not limited to any final Fee Application on or before the Fee Claim Deadline, and (z) objecting to Fee Applications described in the Plan.

**Section 7.7    Winding Down of Affairs**

Following the Effective Date, the Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down its affairs.  On and after the Effective Date, the Plan Administrator may, in the name of the Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the

Bankruptcy Code or the Bankruptcy Rules, other than the restrictions imposed by the Plan or the Confirmation Order.

### Section 7.8    The Powers and Duties of the Plan Administrator

The Plan Administrator will act for the Debtor in a fiduciary capacity as applicable to a board of directors, subject to the provisions of the Plan. The powers and duties of the Plan Administrator shall include, without the necessity of a further order of the Bankruptcy Court, without limitation:

1.   investing Cash in accordance with section 345 of the Bankruptcy Code, withdrawing and making Distributions of Cash to holders of Allowed Administrative Claims and paying taxes and other obligations owed by the Debtor or incurred by the Plan Administrator, from the Administrative Claims Fund and Available Cash in accordance with the Plan;

2.   engaging attorneys, consultants, agents, employees, and any other professional Persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

3.   executing and delivering all documents, and taking all actions, necessary to consummate the Plan and wind down the Debtor's business;

4.   coordinating the turnover of property, if any, subject to rejected executory contracts or abandonment or disposal of any retained Assets;

5.   overseeing compliance with the Debtor's accounting, finance, and reporting obligations;

6.   preparing financial statements and United States Trustee post-confirmation quarterly reports, until such time a final decree has been entered by the Bankruptcy Court;

7.   overseeing the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, if required;

8.   performing any additional corporate actions as necessary to carry out the wind down of the Debtor;

9.   paying the fees and expenses of the attorneys, consultants, agents, employees, and other professional Persons engaged by the Debtor and the Plan Administrator, to pay all other expenses for winding down the affairs of the Debtor in

accordance with a wind down budget or as otherwise agreed to by the Plan Administrator, and in the event of a dispute that cannot be resolved, resolving such dispute in the Bankruptcy Court, subject to the terms of the Plan;

10.     disposing of, and delivering title to others of, or otherwise realizing the value of, all the remaining Assets;

11.     acting on behalf of the Debtor in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any Claim and otherwise pursue actions involving Assets of the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise, waived, relinquished or transferred in the Plan (excluding Claims and Causes of Action transferred to the General Unsecured Creditor Trust);

12.     implementing and/or enforcing all provisions of the Plan; and

13.     such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Bankruptcy Court order or as may be needed or appropriate to carry out the provisions of the Plan.

## Section 7.9     Compensation of Plan Professionals

The reasonable fees and expenses of any professionals retained by the Plan Administrator under the Plan and the additional expenses of the Plan Administrator incurred in the performance of its duties as Plan Administrator under this Plan shall be paid by the Plan Administrator from Available Cash, and shall not be subject to the approval of the Bankruptcy Court.

## Section 7.10    Appointment of the Plan Administrator

The Debtor, in consultation with the Committee and the holders of Allowed Secured Claims, shall appoint the Plan Administrator and identify such Person in the Confirmation Order. The Plan Administrator shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code, except for matters involving the General Unsecured Trust Assets, and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.

## Section 7.11    Formation of the General Unsecured Creditor Trust

On the Effective Date, the General Unsecured Creditor Trust shall be formed pursuant to the Plan and established and become effective in accordance with the General Unsecured Trust Agreement to liquidate the General Unsecured Trust Assets, including, the prosecution of Causes

of Action of, and retained by, the Estate under the jurisdiction of the Bankruptcy Court and to enable the General Unsecured Creditor Trustee to distribute the proceeds thereof to holders of Allowed General Unsecured Claims in accordance with the Plan and the General Unsecured Trust Agreement.  The General Unsecured Trust shall be established for the sole purpose of liquidating and distributing the General Unsecured Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  The General Unsecured Creditor Trust shall consist solely of the General Unsecured Creditor Trust Assets, and on the Effective Date, the Debtor shall transfer all of the General Unsecured Creditor Trust Assets to the General Unsecured Creditor Trust.  On the Effective Date, the General Unsecured Creditor Trust Agreement, in a form reasonably acceptable to the Debtor and the Committee, shall be executed by the Debtor and the General Unsecured Creditor Trustee and shall become effective without further action by any party.

On the Effective Date or as soon as practicable thereafter, the General Unsecured Creditor Trust Funding Reserve shall be established.  Subject to the provisions of the General Unsecured Creditor Trust Agreement, the General Unsecured Creditor Trust Funding Reserve shall be used to pay the expenses of the General Unsecured Creditor Trust, including without limitation, costs and expenses of counsel or other advisors.  Additional funding of the General Unsecured Creditor Trust Funding Reserve may only be authorized by the General Unsecured Creditor Trustee in accordance with the terms of the General Unsecured Creditor Trust Agreement.  Subject to the provisions of the General Unsecured Creditor Trust Agreement, to the extent additional funding is so authorized, 100% of the cost of such funding shall be paid only out of General Unsecured Creditor Trust Assets that would otherwise be distributed to the holders of General Unsecured Creditor Trust Interests hereunder.

The terms of the General Unsecured Creditor Trust Agreement, which shall be satisfactory in form and substance to the Debtor and the Committee, shall control as to all matters applicable to the General Unsecured Creditor Trust. To the extent there is any conflict between the General Unsecured Creditor Agreement and the Plan, the General Unsecured Creditor Trust Agreement shall govern.

**Section 7.12    Powers and Duties of the General Unsecured Creditor Trustee**

As of the Effective Date, with respect to the General Unsecured Creditor Trust Assets, the General Unsecured Creditor Trustee shall be appointed, and shall serve in such capacity, and shall have comparable authority as a bankruptcy trustee of the Debtor.   The powers, rights, and responsibilities of the General Unsecured Creditor Trustee, all of which shall arise upon the occurrence of the Effective Date, shall be specified in the General Unsecured Creditor Trust Agreement and shall include, but not be limited to:

1. collecting and liquidating the General Unsecured Creditor Trust Assets under the jurisdiction of the Bankruptcy Court;

2. asserting, prosecuting, pursuing, compromising and settling in accordance with the General Unsecured Creditor Trustee's reasonable business judgment, all Claims and

Causes of Action transferred to the General Unsecured Creditor Trust;

3. asserting and enforcing all legal or equitable remedies and defenses belonging to the Debtor or its Estate, including, without limitation, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code related to the General Unsecured Creditor Trust Assets;

4. objecting to all Claims in accordance with the General Unsecured Creditor Trustee's reasonable business judgment and making Distributions to holders of General Unsecured Creditor Trust Interests;

5. negotiating, resolving and entering into settlements for all matters affecting the Estate, as related to the General Unsecured Creditor Trust Assets, including, without limitation, Disputed Claims, and/or other Causes of Action related thereto, to the extent set forth in the General Unsecured Creditor Trust Agreement and except as provided therein, without further order of the Bankruptcy Court;

6. taking such actions as he or she deems appropriate in the General Unsecured Creditor Trustee's reasonable business judgment against any Person with respect to a Claim or Cause of Action related to the General Unsecured Creditor Trust Assets, to the extent set forth in the General Unsecured Creditor Trust Agreement;

7. proceeding with and employing all discovery devices permitted under applicable law, including Rule 2004 of the Bankruptcy Rules, in order to investigate any Claims or Causes of Action related to the General Unsecured Creditor Trust Assets;

8. employing, without further order of the Bankruptcy Court, professionals or other Persons to assist it in carrying out its duties hereunder and compensating and reimbursing the expenses of those professionals and other persons, on the terms to be agreed to by the General Unsecured Creditor Trustee and such professionals and other Persons, without further order of the Bankruptcy Court, to the extent set forth in the General Unsecured Creditor Trust Agreement;

9. commencing any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance

22

with applicable laws, to the extent set forth in the General Unsecured Creditor Trust Agreement; and

10.     such other powers as may be vested in or assumed by the General Unsecured Creditor Trustee pursuant to the General Unsecured Creditor Trust Agreement, the Plan or Bankruptcy Court Order.

## Section 7.13    Appointment of the General Unsecured Creditor Trustee

The General Unsecured Creditor Trustee shall be selected by the Committee prior to the Effective Date.

## Section 7.14    Issuance of General Unsecured Creditor Trust Interests

(a)     General Unsecured Creditor Trust Interests

On the Effective Date or as soon as practicable thereafter, the Debtor shall deliver to the General Unsecured Creditor Trustee a list of each Person to receive General Unsecured Creditor Trust Interests as of the Effective Date pursuant to the Plan, including the Allowed amounts of the General Unsecured Claims of, and the address of, each such Person. On the Effective Date, the Debtor shall also deliver to the General Trustee a list of each holder of a General Unsecured Claim that is a Disputed Claim as of the Effective Date, including the maximum amount of each such Claim, and the address of the holder thereof.

(b)     Transfer of General Unsecured Creditor Trust Interests

The General Unsecured Creditor Trustee shall maintain a register of the holders of General Unsecured Creditor Trust Interests and shall adjust, without further order of the Bankruptcy Court, the register from time to time as General Unsecured Claims that are Disputed Claims become Allowed. To the extent permitted in the General Unsecured Creditor Trust Agreement, upon notice to the General Unsecured Creditor Trustee by any holder of a General Unsecured Creditor Trust Interest, the General Unsecured Creditor Trustee shall amend the register to reflect any transfer of a General Unsecured Creditor Trust Interest by such holder to a transferee as set forth in the notice; **provided, however, that the General Unsecured Creditor Trustee need not reflect any transfer (or make any distribution to any transferee) and will give notice to such holder that no transfer has been recognized in the event the General Unsecured Creditor Trustee reasonably believes that such transfer (or the distribution to such transferee) may constitute a violation of applicable laws or might cause the General Unsecured Creditor Trust to be required to register the General Unsecured Creditor Trust Interests, or to become a reporting company, under the Securities Exchange Act of 1934, as amended.**

## Section 7.15    Distributions to Holders of Claims and Interests

(a)     Estimation of Claims

The Plan Administrator and/or General Unsecured Creditor Trustee, as applicable, may, at any time, request that the Bankruptcy Court estimate any Claim not expressly Allowed by the

terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated by the Bankruptcy Court and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

(b)    No Recourse

Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor, the Estate, the Plan Administrator, the General Unsecured Creditor Trustee, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property.  Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

**THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

(c)    Automatic Disallowance and Expungement of Certain Claims

On the Effective Date, all Claims filed after the applicable Bar Date that were required to be filed in advance of such Bar Date and under the terms of the order relating thereto, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

(d)    Distributions on Account of Allowed Claims

On the Effective Date, or as soon as practicable thereafter, the Debtor shall establish: (i) the General Unsecured Creditor Trust Funding Reserve with $[•] in Cash; (ii) the Disputed Claims Reserve with Cash in an amount to be determined by the Plan Administrator in consultation with the General Unsecured Creditor Trustee, and (iii) the Administrative Claims Fund with Cash in an amount sufficient to pay Allowed Administrative Claims and Allowed Priority Tax Claims.

On the Effective Date, or as soon as practicable thereafter, the Administrative Claims Fund shall be distributed to holders of Allowed Administrative Claims and Allowed Priority Tax Claims by the Plan Administrator.

       (i)        Distribution on Account of Allowed Class 1—Secured Claims

Provided that the holder of a Class 1 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 1 that were Disputed Claims on the Effective Date and have thereafter become Allowed Secured Claims, immediately following the date upon which such Claims became Allowed Secured Claims, or as soon thereafter as is practicable, holders of each such Allowed Secured Claim shall receive (a) a cash payment equal to five-percent (5%) of such Claim and thereafter (i) on the first anniversary of the Effective Date, a cash payment equal to twenty-percent (20%) of the then-remaining balance of such Claim, (ii) on the second anniversary of the Effective Date, a cash payment equal to twenty-five-percent (25%) of the then-remaining balance of such Claim, (iii) on the third anniversary of the Effective Date, a cash payment equal to thirty-three-percent (33%) of the then-remaining balance of such Claim, (iv) on the fourth anniversary of the Effective Date, a cash payment equal to fifty-percent (50%) of the then-remaining balance of such Claim, and (iv) on the fifth anniversary of the Effective Date, a cash payment equal to one-hundred-percent (100%) of the then-remaining balance of such Claim in full and final satisfaction of such Claim, or (b) such other treatment as may be agreed upon by the Plan Administrator and the holder of such Allowed Secured Claim; *provided, however,* each holder of an Allowed Secured Claim shall be granted a valid, perfected, and enforceable Lien on the Assets of the Reorganized Debtor in the amount of such Holder's Allowed Secured Claim.

       (ii)        Distribution on Account of Allowed Class 2—General Unsecured Claims

Provided that the holder of a Class 2 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 2 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, holders of each such Allowed General Unsecured Claim shall, in exchange for the provision of payment terms to the Reorganized Debtor similar to those extended  to the Debtor before the Petition Date, receive (a) a cash payment equal to five-percent (5%) of such Claim and thereafter (i) on the first anniversary of the Effective Date, a cash payment equal to twenty-percent (20%) of the then-remaining balance of such Claim, (ii) on the second anniversary of the Effective Date, a cash payment equal to twenty-five-percent (25%) of the then-remaining balance of such Claim, (iii) on the third anniversary of the Effective Date, a cash payment equal to thirty-three-percent (33%) of the then-remaining balance of such Claim, (iv) on the fourth anniversary of the Effective Date, a cash payment equal to fifty-percent (50%) of the then-remaining balance of such Claim, and (iv) on the fifth anniversary of the Effective Date, a cash payment equal to one-hundred-percent (100%) of the then-remaining balance of such Claim in full and final satisfaction of such Claim, or (b) such other treatment as may be agreed upon by the General Unsecured Creditor Trustee and the holder of such Allowed General Unsecured Claim.

(iii)        Distribution on Account of Allowed Class 3—Convenience Claims

Provided that the holder of a Class 3 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 3 that were Disputed Claims on the Effective Date and have thereafter become Allowed Convenience Claims, immediately following the Distribution Date subsequent to the date upon which such Claims became Convenience Claims, or as soon thereafter as is practicable, the holder of such Allowed Convenience Claim shall receive payment equal to the full amount of such Allowed Convenience Claim in full satisfaction of such Allowed Convenience Claim.

(iv)        Distributions on Account of Class 4—Interests

The holder of a Class 4 Interest will receive no Distribution under the Plan.

## Section 7.16   Distribution of General Unsecured Creditor Trust Assets

The General Unsecured Creditor Trustee shall distribute to the holders of General Unsecured Creditor Trust Interests, on an annual basis (or such other basis as determined by the General Unsecured Creditor Trustee), the proceeds of the General Unsecured Creditor Trust Assets, except the General Unsecured Creditor Trust Funding Reserve, which General Unsecured Creditor Trust Funding Reserve shall be used to fund the activities of the General Unsecured Creditor Trust.

(a)        Disputed Claims Reserve

(i)        Objections to Claims

Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the General Unsecured Creditor Trustee shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest.  Subject to further extension by the Bankruptcy Court, the General Unsecured Creditor Trustee shall file and serve a copy of any such objection upon the holder of the Claim to which an objection is made on or before the latest to occur of: (i) 180 days after the Effective Date and (ii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of the 180-day time period.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if made (a) in accordance with Federal Rule of Civil Procedure 4, as modified, and made applicable by Bankruptcy Rule 7004;  (b) by first-class mail, postage prepaid, on the signatory of the proof of claim or other representative identified in the proof of claim or any attachment thereto at the address of the Creditor set forth therein;  or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case.  From and after the Effective Date, the General Unsecured Creditor Trustee may settle or compromise any Disputed Claim or Cause of Action without further order of the Bankruptcy Court.

(ii)        Resolution of Disputed Claims

No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

(iii)        Establishment of Disputed Claims Reserve

On or before the Effective Date, the Debtor shall establish and fund the Disputed Claims Reserve with Cash in an amount to be determined by the Plan Administrator in consultation with the General Unsecured Creditor Trustee (or as otherwise required by order of the Bankruptcy Court). The Disputed Claims Reserve shall be administered by the Plan Administrator; *provided, however*, that the Plan Administrator shall consult with the General Unsecured Creditor Trustee with respect to the administration of such Disputed Claims Reserve.

(iv)        Second Avenue Claim

In connection with the investigation pursuant to the 2004 Examination Order, it is the Debtor's position that all Claims arising under the Second Avenue Credit Facility will be either (i) subordinated to the status of General Unsecured Claims or (ii) disallowed in their entirety. For this reason, and for the purposes of classifying Claims pursuant to the Plan and soliciting votes thereon, all Claims arising under the Second Avenue Credit Facility will be classified as General Unsecured Claims, without any determination as to their Allowance at this time.

(v)        Duties in Connection with Disputed Claims

The General Unsecured Creditor Trustee shall object to, settle, or otherwise resolve Disputed Claims, and the Plan Administrator shall make Distributions to holders of Disputed Claims that subsequently become Allowed Administrative Claims in accordance with the Plan; *provided, however*, the General Unsecured Creditor Trustee shall make Distributions from the General Unsecured Creditor Trust for Disputed Claims that become Allowed General Unsecured Claims, with the amount necessary to make such Distributions being transferred by the Plan Administrator from the Disputed Claims Reserve to the General Unsecured Creditor Trust.

(vi)        Distributions when a Disputed Claim Is Resolved

On the next Distribution Date following the date upon which a Disputed Claim is ultimately Allowed, the holder of such Claim shall receive from the Disputed Claims Reserve any amounts attributable to such Claim, in accordance with the Plan. Any Cash held in the Disputed Claims Reserve for the benefit of a holder of a Disputed Claim, which is subsequently disallowed, in whole or in part, shall become Available Cash for distribution in accordance with the provisions of the Plan.

(b)        <u>No Distributions from Litigation Recoveries to Defendants</u>

If a litigation recovery on account of a Cause of Action is obtained by the General Unsecured Creditor Trustee, such defendant shall not be entitled to share directly or indirectly in the proceeds from such litigation recovery, including, but not limited to, any recoveries pursuant to Section 502(h) of the Bankruptcy Code.

**Section 7.17    Miscellaneous Distribution Provisions**

     (a)    <u>No Distribution in Excess of Allowed Amount of Claim</u>

Notwithstanding anything to the contrary herein or in the Plan, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim plus interest as provided herein.

     (b)    <u>*De Minimis* Distributions</u>

Neither the Plan Administrator nor the General Unsecured Creditor Trustee, as applicable, shall be required to make any Cash payment of less than one hundred dollars ($50.00).

     (c)    <u>Allocation of Payments</u>

Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest, if any, that has accrued on such Claims but remains unpaid.

     (d)    <u>Timing of Distributions</u>

Each Distribution shall be made on the relevant Distribution Date therefore and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on any date specified herein.

     (e)    <u>Manner of Payments under the Plan</u>

Unless the Person or Entity receiving a Distribution agrees otherwise, any Distribution to be made in Cash under the Plan shall be made, at the election of the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, by check drawn on a domestic bank or by wire transfer from a domestic bank.

     (f)    <u>Setoffs</u>

The Plan Administrator or the General Unsecured Creditor Trustee, as applicable, is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the Claims, rights, and Causes of Action of any nature that the Estate may hold against the holder of such Allowed Claim; *provided*, that the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, gives the holder of such Allowed Claim no fewer than five (5) days' notice in writing (including email) of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within thirty (30) days of receiving such notice. If an objection is timely raised to a proposed setoff, the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, may seek relief from the Bankruptcy Court to effectuate the setoff. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Estate, the Plan Administrator, or the General Unsecured Creditor Trustee of any such Claims, rights, and Causes of Action the Estate may have against such holder.

(g)     Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or transfer of any lease or sublease, the delivery, making, filing, or recording of any deed or other instrument of transfer, or the issuance, transfer, or exchange of any security, under the Plan, including any deeds, bills of sale, or assignments executed in connection with the Sale or any other disposition of Assets contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage, recording, or other similar tax to the maximum extent covered by section 1146 of the Bankruptcy Code.

(h)     Preservation and Application of Insurance

The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

(i)     Address for Delivery of Distributions

Subject to Bankruptcy Rule 9010, any Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the registers maintained by the Plan Administrator or General Unsecured Creditor Trustee, as applicable, as provided for in the Plan.  If any Distribution is returned to the Plan Administrator or General Unsecured Creditor Trustee, as applicable, as undeliverable, no Distributions shall be made to such holder unless the Plan Administrator or General Unsecured Creditor Trustee, as applicable, is notified of such holder's then current address within one hundred twenty (120) days after such Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the undeliverable Distribution shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan.

(j)     Unclaimed Property

All Distributions to any holder of an Allowed Claim shall be made at the Distribution Address unless the Debtor, the Plan Administrator, and/or the General Unsecured Creditor Trustee, as applicable, have been notified in writing of a change of address.  All demands for undeliverable Distributions shall be made on or before sixty (60) days after the date such undeliverable Distribution was initially made.  Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Estate and be treated as Available Cash. Any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

Checks issued by the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be in writing to the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, by the holder of the Allowed Claim to whom such check originally was issued.  Any such written claim in respect of such a voided check must be received by the Plan Administrator on or before sixty (60) days after the expiration of the sixty (60) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Estate and

29

be treated as Available Cash.  Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, the Plan Administrator or the General Unsecured Creditor Trustee.

(k)   <u>Record Date for Distributions to Holders of Claims</u>

As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of the Distribution of Available Cash.  The Debtor, the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date.

(l)   <u>Disputed Payments</u>

If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Administrator or the General Unsecured Creditor Trustee, as applicable, may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Estate.  Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

(m)   <u>Resignation of Officers</u>

Upon the Effective Date of the Plan, the Debtor's sole officer, Guy Viti, shall be deemed to have resigned from his employment with the Debtor.

(n)   <u>Resignation or Removal of Plan Administrator or General Unsecured Creditor Trustee</u>

(i)   Resignation or Removal of Plan Administrator

If the Plan Administrator resigns or is removed, dissolves, or is incapacitated, the Bankruptcy Court shall designate another Person to become the Plan Administrator and thereupon, the successor Plan Administrator, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, with the same compensation of the predecessor Plan Administrator.  No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

(ii)   Resignation or Removal of the General Unsecured Creditor Trustee

If the General Unsecured Creditor Trustee resigns or is removed, dissolves, or is incapacitated, the terms of the General Unsecured Creditor Trust Agreement shall govern regarding the designation of a successor General Unsecured Creditor Trustee, and following such designation, the successor General Unsecured Creditor Trustee, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, with the same compensation of the predecessor General Unsecured Creditor Trustee.  No successor General Unsecured Creditor Trustee shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

30

(o)    <u>No Agency Relationship</u>

Neither the Plan Administrator nor the General Unsecured Creditor Trustee, as applicable, shall be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan.  Neither the Plan Administrator nor the General Unsecured Creditor Trustee, as applicable, shall be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless arising from gross negligence, willful misconduct, or breach of fiduciary duty.  The Plan Administrator and General Unsecured Creditor Trustee, as applicable, shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of each of their, respective, duties under the Plan and General Unsecured Creditor Trust Agreement, except to the extent their actions constitute gross negligence, willful misconduct, or breach of fiduciary duty.  The Plan Administrator and General Unsecured Creditor Trustee, as applicable, may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which they, respectively, believe to be genuine and to have been signed or presented by the proper party or parties.  The Plan Administrator and General Unsecured Creditor Trustee, as applicable, may rely upon information previously generated by the Debtor and such additional information provided to each of them, respectively, by former affiliates of the Debtor.  The liability of either the Plan Administrator or the General Unsecured Creditor Trustee shall be capped at the amount of fees that the Plan Administrator and the General Unsecured Creditor Trustee receive in connection with the Chapter 11 Case.

**ARTICLE VIII.    EFFECT OF THE PLAN ON CLAIMS INTERESTS AND CAUSES OF ACTION**

**Section 8.1    Binding Effect**

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

**Section 8.2    Term of Injunctions or Stays**

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

**Section 8.3    Preservation of Causes of Action**

On the Effective Date, all Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor and Estate, except for those transferred to the General Unsecured Creditor Trustee, are preserved for the benefit of all holders of Allowed Claims and shall be transferred to and vested in the Plan Administrator, for the benefit of holders of all Allowed Claims, as set forth in the Plan unless expressly released, waived, or relinquished under the Plan, the Confirmation Order or other order of the Bankruptcy Court.  No Person may rely on the absence of a specific

reference in the Plan or this Disclosure Statement to any Cause of Action against them as an indication that the Plan Administrator will not pursue a Cause of Action against them.

The General Unsecured Creditor Trust shall exclusively retain and may prosecute and enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that are General Unsecured Creditor Trust Assets, including, but not limited to, Causes of Actions, of potential but unknown value, against those entities listed on Schedule {•} of the Plan.

No preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, Claim preclusion, estoppel (judicial, equitable or otherwise), Claim splitting or laches shall apply to such Claims and Causes of Action by virtue of or in connection with the Confirmation, consummation or effectiveness of the Plan; *provided, however*, that no Claims, demands, rights or Causes of Action that the Debtor or its Estate may hold against the directors and officers of the Debtor, in connection with their duties as directors and officers of the Debtor related to the Chapter 11 Case, shall be retained or preserved for prosecution by the General Unsecured Creditor Trust or any other Person on behalf of the Debtor or its Estate, except for Avoidance Actions, and Claims, demands, rights or Causes of Action arising as a result of willful misconduct or gross negligence.

**Section 8.4      Injunctions**

(a)      <u>Satisfaction of Claims</u>

The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.

(b)      <u>Scope of Injunction</u>

Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtor, its affiliates, the Plan Administrator, the General Unsecured Creditor Trustee, or any present and former directors, officers, trustees, agents, attorneys, advisors, members, or employees of the Debtor, its affiliates, the Plan Administrator, the General Unsecured Creditor Trustee, or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order with respect to a Claim; (iii) creating, perfecting or enforcing any lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation or recoupment of any kind with respect to a Claim, the Assets or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed, from seeking discovery in actions against third parties or from pursuing third party insurance that does not cover Claims against the Debtor. For the avoidance of doubt, nothing in this Injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.

(c)    Release of Collateral

Except as expressly provided herein: (i) each holder of (a) an Allowed Secured Claim; and/or (b) an Allowed Claim that is purportedly secured, on the Effective Date shall (x) turn over and release to the Debtor any and all property that secures or purportedly secures such Claim; and (y) execute such documents and instruments as the Plan Administrator requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title, and interest in such property shall revert to the Debtor, free and clear of all Claims, including (without limitation) Liens, charges, pledges, encumbrances, and/or security interests of any kind.  No Distribution shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Plan Administrator such release of Liens.  Any such holder that fails to execute and deliver such release of Liens within sixty (60) days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or disallowed.

(d)    Cause of Action Injunction

On and after the Effective Date, all Persons other than the Plan Administrator and/or General Unsecured Creditor Trustee, as applicable, will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any claim, debt, right, or Cause of Action that the Plan Administrator and/or General Unsecured Creditor Trustee, as applicable, retains authority to pursue in accordance with the Plan.

**Section 8.5    Exculpation**

**Except as otherwise set forth in the Plan, neither the Debtor, nor any Released Party, advisors, attorneys, nor representatives of any professional employed by any of them (collectively, the "Exculpated Parties") shall have or incur any liability to any Person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring, or administration of the Debtor during the Chapter 11 Case, except for intentional fraud, gross negligence, or willful misconduct. The Plan Administrator and/or General Unsecured Creditor Trustee, as applicable, shall have no liability for any action taken or omitted to be taken in connection with or related to the winding down and post-confirmation administration of the Estate, except for (i) intentional fraud, gross negligence, or willful misconduct, and (ii) solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including Disciplinary Rule 6-102 of the Code of Professional Conduct.  The liability of the Plan Administrator and/or General Unsecured Creditor Trustee, as applicable, shall be**

**capped at the amount of fees that the Plan Administrator or General Unsecured Creditor Trustee received in connection with the Chapter 11 Case.**

### Section 8.6    Compromise of Controversies

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtor.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

### Section 8.7    Releases by the Debtor

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party and their respective advisors, attorneys, and representatives of any professional employed by any of them is deemed released, solely in their capacity in acting on behalf of the Debtor or its Estate, by the Debtor and its Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the subject matter of, any Claim or Interest that is treated in the Plan, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor, in connection with the Chapter 11 Case, taking place on or before the Effective Date.**

### Section 8.8    Post-Confirmation Activity

As of the Effective Date, the Plan Administrator may conclude the winding down of the Debtor's affairs and the General Unsecured Creditor Trustee may administer the General Unsecured Creditor Trust, without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan, the Confirmation Order, and the General Unsecured Creditor Trust, as applicable.  Without limiting the foregoing, the Plan Administrator and the General Unsecured Creditor Trustee may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services, in connection with their respective duties, after the Effective Date without application to and approval of the Bankruptcy Court.

## ARTICLE IX.                EXECUTORY CONTRACTS

### Section 9.1      Executory Contracts and Unexpired Leases

To the extent not previously rejected, on the Confirmation Date, but subject to the occurrence of the Effective Date, all executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date that have not previously been assumed or rejected, or have not been assumed and assigned to the Reorganized Debtor, shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code.

### Section 9.2      Rejection Damages Bar Date

If rejection by the Debtor, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, its Estate, the Plan Administrator, or the General Unsecured Creditor Trustee, unless a proof of claim is filed with the Clerk of the Bankruptcy Court and served upon the Debtor, the Plan Administrator, and/or the General Unsecured Creditor Trustee, as applicable, not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

### Section 9.3      Effect of Post-Confirmation Rejection

The entry by the Bankruptcy Court on or after the Confirmation Date of an Order authorizing the rejection of an executory contract or unexpired lease of the Debtor entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

## ARTICLE X.                CONDITIONS TO CONFIRMATION
## AND OCCURRENCE OF EFFECTIVE DATE

### Section 10.1    Conditions to Confirmation

The Plan may not be confirmed unless the Confirmation Order is entered in a form reasonably acceptable to the Plan Proponent and upon consultation with the Committee.

### Section 10.2    Conditions to Occurrence of Effective Date

The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied.  Any one or more of the following conditions may be waived in whole or in part at any time by the Plan Proponent, and upon consultation with the Committee:

1.    The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order.

2.    The Confirmation Order shall provide for the releases, injunctions and exculpation of the Persons provided for in the Plan.

35

**Section 10.3**   **Effect of Nonoccurrence of the**
**Conditions to Occurrence of Effective Date**

If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date which is no later than the first Business Day after fourteen (14) days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; *provided, however*, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor, or (b) prejudice in any manner the rights of the Debtor or of any other party in interest.

**ARTICLE XI.         CONFIRMABILITY AND SEVERABILITY OF THE PLAN**

The Debtor, in consultation with the Committee, reserves the right to alter, amend, modify, revoke, or withdraw the Plan.  If the Debtor revokes or withdraws the Plan, then nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Debtor or any persons in any further proceedings involving the Debtor.  A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.  Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions therein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

**ARTICLE XII.         ADMINISTRATIVE PROVISIONS**

**Section 12.1   Retention of Jurisdiction**

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, the following purposes:

1.     To determine any motion, adversary proceeding, Avoidance Action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

2.     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

36

3.      To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

4.      To hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

5.      To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

6.      To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

7.      To issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

8.      To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

9.      To hear and determine all matters relating to the General Unsecured Creditor Trust Assets;

10.     To hear and determine all Professional Fee Claims;

11.     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

12.     To take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release, exculpation or

injunction provisions set forth herein, or to maintain the
integrity of the Plan following consummation;

13.     To determine such other matters and for such other purposes
as may be provided in the Confirmation Order;

14.     To hear and determine matters concerning state, local, and
federal taxes in accordance with sections 346, 505, and 1146
of the Bankruptcy Code;

15.     To enter a final decree closing the Chapter 11 Case;

16.     To recover all Assets of the Debtor and property of the
Estate, wherever located;

17.     To hear and determine any matters for which jurisdiction
was retained by the Bankruptcy Court pursuant to prior
Orders; and

18.     To hear and determine any other matters related hereto and
not inconsistent with the Bankruptcy Code, title 28 of the
United States Code, and other applicable law.

**Section 12.2   Governing Law**

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply,
the rights and obligations arising under the Plan shall be governed by the laws of the State of New
York, without giving effect to principles of conflicts of law of New York.

**Section 12.3   Effectuating Documents, Further Transactions**

The Debtor, the Plan Administrator, and/or the General Unsecured Creditor Trustee, as
applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments,
releases, and other agreements or documents, and take such actions as may be necessary or
appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 12.4   Waiver of Bankruptcy Rules 3020(e) and 7062**

The Debtor may request that the Confirmation Order include (i) a finding that Bankruptcy
Rule 7062 shall not apply to the Confirmation Order, and (ii) authorization for the Debtor to
consummate the Plan immediately after entry of the Confirmation Order.

**Section 12.5   No Admissions**

Notwithstanding anything herein or in the Plan to the contrary, nothing contained in the
Plan or in this Disclosure Statement or the General Unsecured Creditor Trust Agreement shall be
deemed as an admission by any Person with respect to any matter set forth herein.

**Section 12.6    Headings**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of provisions of the Plan.

**Section 12.7    Payment of Statutory Fees**

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with the Plan.

**Section 12.8    Governmental Carve-Out**

Nothing in the Plan or the Confirmation Order shall (i) effect a release of any Claim of, (ii) enjoin from bringing any Claim, suit, action or other proceedings by, or (iii) exculpate any party from any liability to, the United States Government or any of its agencies or any state or local government within the United States, arising under (v) the federal securities laws, (w) the Employment Retirement Income Security Act of 1974, as amended, (x) the Internal Revenue Code, (y) the environmental laws, or (z) any criminal laws of the United States.

**Section 12.9    Disposal of Books and Records**

The Plan Administrator's or General Unsecured Creditor Trustee's rights, as applicable, to seek authorization from the Bankruptcy Court, subject to the written approval of the Reorganized Debtor, for the destruction of books and records prior to the expiration of any statutory period requiring that such records be maintained are preserved.

**Section 12.10   Amendments**

        (a)        Pre-Confirmation Amendment

The Debtor, in consultation with the Committee, may modify the Plan at any time prior to the entry of the Confirmation Order, provided the modified Plan and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

        (b)        Post-Confirmation Amendment Not Requiring Re-Solicitation

After the entry of the Confirmation Order, the Debtor, in consultation with the Committee, may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided: (i) the Debtor obtains Court approval of such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment of any Class under the Plan.

(c)    Post-Confirmation Amendment Requiring Re-Solicitation

After the Confirmation Date and before the Effective Date of the Plan, the Debtor, in consultation with the Committee, may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Court approval for such modification, after notice to all Creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Debtor complies with section 1125 of the Bankruptcy Code with respect to the modified Plan.

## Section 12.11  Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the, heir, executor, administrator, successor, or assign of such Person.

## Section 12.12  Confirmation Order and Plan Control

To the extent the Confirmation Order and/or the Plan is inconsistent with this Disclosure Statement or any other agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan.

## Section 12.13  Further Action

Nothing contained in the Plan will prevent the Debtor or the General Unsecured Creditor Trustee, as applicable, from taking such actions as may be necessary to consummate the Plan even though such actions may not be specifically provided for within the Plan.

## Section 12.14  Exhibits

All Exhibits to the Plan are incorporated by reference and are intended to be an integral part of this document as though fully set forth in the Plan.

## Section 12.15  Notices

Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

| | |
|---|---|
| **Counsel to the Debtor**: | **Counsel to the Committee**: |
| Griffin Hamersky LLP | Lowenstein Sandler LLP |
| Attn:  Scott A. Griffin | Attn:  Eric Chafetz |
|      Michael D. Hamersky |      Jeffrey Cohen |
| 400 Lexington Avenue, Suite 400 | 1251 Avenue of the Americas |
| New York, New York 10170 | New York, New York 10020 |
| | |
| **United States Trustee**: | **Counsel to the DIP Lender:** |
| Office of the United States Trustee | Locke Lord LLP |
| for the Northern District of New York | Attn:  Ira Greene |
| Attn:  Guy A. Van Baalen |      Michael Kind |
| Alexander Pirnie U.S. Courthouse | 200 Vesey Street |
| and Federal Building, Room 105 | New York, New York 10281 |
| 10 Broad Street | |
| Utica, New York 13501 | |

**Section 12.16  Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**Section 12.17  Deemed Acts**

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

Dated: New York, New York
    April 8, 2019

> Herb Philipson's
> Army and Navy Stores, Inc.
> *Debtor and Debtor in Possession*
>
>
> By:
>
> /s/ Guy Viti_____
> Guy Viti, President & CEO