UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

HERB PHILIPSON'S ARMY AND NAVY                    Chapter 11
STORES, INC.,                                     Case No. 18-61376 (DD)
                              Debtor.[1]

_____

*Appearances:*

| | |
|---|---|
| *Jamie I. Freedman, Esq.* <br> *Scott A. Griffin, Esq.* <br> *Michael Hamersky, Esq.* <br> Griffin Hamersky, LLP <br> 420 Lexington Avenue <br> Suite 400 <br> New York, New York 10170 | *Attorneys for Debtor* |
| *Richard L. Weisz, Esq.* <br> Hodgson Russ LLP <br> 677 Broadway <br> Albany, New York 12207 | *Attorneys for Gary L. Philipson* |
| *Richard P. Ruswick, Esq.* <br> Levene Gouldin & Thompson, LLP <br> 121 E. Buffalo Street <br> Ithaca, New York 14850 | *Attorneys for Wachs Rome Development LLC* |
| *Michael B. Kind, Esq.* <br> *Ira S. Greene, Esq.* <br> Locke Lord LLP <br> 200 Vesey Street, 20th Floor <br> New York, New York 10281 | *Attorneys for Crossroads Financial Group, LLC* |
| *Jeffrey Cohen, Esq.* <br> Lowenstein Sandler LLP <br> 1251 Avenue of the Americas <br> New York, New York 10020 | *Attorneys for the Official Committee of Unsecured Creditors* |
| *Erin Champion, Esq.* <br> Office of the United States Trustee <br> 10 Broad Street, Room 105 <br> Utica, New York 13501 | |

Honorable Diane Davis, United States Bankruptcy Judge

---

[1] The last four digits of the Debtor's federal tax identification number are 4814.

**MEMORANDUM-DECISION**

*I.     Introduction*

This matter is before the Court on motions filed by the United States Trustee and Gary L. Philipson ("Philipson"), seeking conversion of the chapter 11 case to a case under chapter 7 pursuant to 11 U.S.C. § 1112(b).[2] The United States Trustee filed its motion on July 30, 2019 (the "UST Motion," ECF No. 463). Herb Philipson's Army and Navy Stores, Inc. ("Debtor") filed an Objection on August 13, 2019 (ECF No. 475), which was joined by the Official Committee of Unsecured Creditors (the "Committee") on August 14, 2019 (ECF No. 478). On the same date, the DIP Lender, Crossroads Financial, LLC ("Crossroads"), filed an Objection (ECF No. 480), and Wachs Rome Development, LLC ("Wachs Rome") filed a Response (ECF No. 482). The Court held an initial hearing on the UST Motion on August 29, 2019, which was then adjourned multiple times at the request of the United States Trustee and all interested parties.

On October 29, 2019, Philipson filed his motion (the "Philipson Motion," ECF No. 566). On November 14, 2019, Debtor filed an Objection (ECF No. 592), which was joined by the Committee on November 18, 2019 (ECF No. 593). On November 19, 2019, the United States Trustee filed a Reply to Debtor's Objection to the UST Motion (ECF No. 595), and Philipson filed a Reply to Debtor's Objection to the Philipson Motion (ECF No. 597).

On November 20, 2019, the Court held an evidentiary hearing and heard arguments on the UST and Philipson Motions. At the Court's request, the United States Trustee presented documentary evidence through its sole witness, John F. Devlin ("Devlin"), who is an Auditor – *Bankruptcy* for the United States Trustee.[3] Debtor's principal, Guy Viti, was not present and did not participate at the hearing. The Court held a brief chambers conference following the conclusion of Devlin's testimony and the arguments of counsel, during which time the parties agreed to postpone the Court's decision and set a schedule for post-

---

[2] Unless otherwise indicated, all chapter, section, and rule references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.
[3] The Court's request for testimony was prompted by the United States Trustee's reliance on certain financial information and reports that had been made available by Debtor and/or Crossroads to the United States Trustee and parties in interest but were not yet filed and made part of the official case record.

hearing submissions, including proposed findings of fact. The Court also directed Crossroads to submit a current accounting related to the liquidation sale of Debtor's retail inventory, which Crossroads filed on November 25, 2019 (the "Accounting," ECF No. 605), to assist the parties with their respective submissions. On the same date, the United States Trustee filed Devlin's Affidavit in further support of the UST Motion (the "Devlin Affidavit," ECF No. 604). On November 27, 2019, Philipson filed his Statement of Facts (ECF No. 609), the United States Trustee filed its Statement of Facts (ECF No. 611), and Debtor and the Committee filed their Joint Stipulation of Facts (ECF No. 612). As of that date, the Court took the matter under advisement.

The Court has considered the evidence presented at the evidentiary hearing, the exhibits admitted into evidence, the parties' pleadings and post-hearing submissions, the record in this case, and the arguments of counsel. This Memorandum-Decision and Order will constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, as made applicable to this contested matter by Rule 9014(c).

II.     *Jurisdiction*

The Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

III.    *Background*

This case has been pending since October 8, 2018, when Debtor filed a petition for relief under chapter 11 and began operating as a debtor-in-possession under §§ 1107 and 1108. As evidenced by the United States Trustee's Notice of Appointment filed on October 19, 2018 (ECF No. 67), the Committee was appointed to represent the unsecured creditors. Through its counsel, Lowenstein Sandler, LLP, the Committee has taken a very active role in the case in accordance with § 1103.

Debtor's history is set forth in Viti's Chapter 11 Affidavit filed on October 8, 2018 (the "Viti Affidavit," ECF No. 13), in accordance with Local Bankruptcy Rule 2015-2. In March 2018, Viti purchased Debtor from Philipson and his late wife, Aviva Philipson. (Viti. Aff. ¶ 17.) On July 31, 2018, Debtor entered into a credit agreement with its former senior secured first priority lender, Second Avenue Capital Partners,

LLC ("Second Avenue"). (*Id.* ¶ 15.) On or about October 2018, Second Avenue called a default under that agreement, which precipitated Debtor's bankruptcy filing.

At the time of filing, Debtor operated nine retail stores throughout Central New York. (*Id.* ¶ 19.) Debtor owed secured creditors Second Avenue and the Philipsons approximately $3.3 million, collectively, and general unsecured creditors approximately $3.2 to $4.5 million.[4] Both Viti and Debtor's counsel represented that Debtor intended to restructure and reorganize its business while in chapter 11. To that end, on March 27, 2019, Debtor filed a motion seeking Court approval to obtain secured, superpriority debtor-in-possession financing from Crossroads (the "DIP Financing Motion," ECF No. 334). On April 8, 2019, Debtor filed a proposed Chapter 11 Plan and Disclosure Statement (ECF Nos. 366 & 367), wherein Debtor set forth an exit financing strategy and a proposed 100% repayment plan over a 5-year term. On April 2, 2019, the Philipsons filed a Limited Objection to the DIP Financing Motion. (ECF No. 339.) On April 4, 2019, other parties filed objections to the DIP Financing Motion, including the United States Trustee (ECF No. 342), Hiawatha Plaza Associates, LLC (ECF No. 342), Second Avenue (ECF No. 345), and the Committee (ECF No. 347).

On April 18, 2019, the Court heard and orally granted the DIP Financing Motion. The Court issued a Final Order granting the DIP Financing Motion on April 24, 2019 (the "DIP Financing Order," ECF No 400.) Notwithstanding Second Avenue's assertion of a senior secured claim in the aggregate amount of $1,325,725.00, Debtor and Second Avenue executed a Stipulation and Settlement Agreement providing for the allowance and payment of Second Avenue's secured claim in the reduced amount of $824,633.00, which the Court approved by Order issued April 24, 2019 (ECF No. 399). In addition to the payment of Second Avenue's claim, the DIP Financing Order provided for the subordination of the Philipsons' liens and a $25,000.00 carveout for payment of § 503(b)(9) claims, and required Debtor to provide weekly financial reports to Crossroads, with copies to the Committee and the Philipsons. Following entry of the

---

[4] The Court notes that the record contains inconsistent representations by Debtor, including this one regarding the amount of unsecured prepetition debt. While Debtor's early filings included the former figure of $3.2 million (*see* Viti Aff. ¶ 11), Debtor's later pleadings included the latter figure of $4.5 million.

DIP Financing Order, in furtherance of its efforts to reorganize and streamline its business operations, Debtor rejected three commercial lease agreements and closed three of its nine retail stores.

On July 2, 2019, however, Debtor filed an emergency motion seeking Court approval to conduct a § 363 sale of substantially all assets (the "Sale Motion," ECF No. 441), which the Court granted in part by Order issued July 10, 2019 (ECF N0. 448). On July 24, 2019, Debtor withdrew the Sale Motion on the record after the proposed buyer and sole bidder backed out. Following the collapse of Debtor's sale efforts, the United States Trustee immediately sought conversion of the case.

The UST Motion was originally scheduled for a hearing on August 21, 2019. At that time, Debtor had defaulted on its obligations to Crossroads and it did not have the ability to cure the default. Crossroads therefore had the right to exercise its rights and remedies under the DIP Financing Order. The United States Trustee, with the express approval of the Committee, the Philipsons, and Debtor's commercial landlords, agreed to table the issue of conversion and to allow Debtor to begin a wind-down and liquidation of its business. Specifically, it was agreed that Crossroads, through its agent, Hilco Merchant Resources, LLC ("Hilco"), would conduct an orderly liquidation and store closing sales to maximize recovery for Crossroads, the Philipsons, and the estate. Debtor and Crossroads executed a Stipulation and formalized sale guidelines. On August 22, 2019, Debtor filed an emergency motion for Court approval of the same (ECF No. 495), which was heard on August 29, 2019, and granted by Order issued on August 30, 2019 (ECF No. 516). The United States Trustee adjourned the UST Motion to November 20, 2019. The store closing sales were completed on November 11, 2019, and all of Debtor's retail inventory was sold. Certain of Debtor's furniture, fixtures, and equipment were also sold.

While Hilco liquidated the retail inventory, Debtor proceeded to reject its remaining commercial leases and to negotiate and settle administrative expense claims with its commercial landlords. On November 27, 2019, Debtor filed a motion to abandon certain property (ECF No. 609), which has been held in abeyance pending the Court's determination of this matter. For the sixth time, Debtor has also adjourned its motion for an order approving the Disclosure Statement, which Debtor has now scheduled for May 19, 2020.

Meanwhile, on September 20, 2019, the Philipsons commenced an adversary proceeding by filing an Adversary Complaint against Debtor to determine the nature and extent of their liens, which were subordinated first to Second Avenue and subsequently to Crossroads (the "Philipson Complaint," ECF Adv. Pro. No. 19-80007). On November 14, 2019, Debtor filed an Answer, including affirmative defenses of unclean hands and setoff, and Counterclaims for the avoidance and recovery of preferential transfers made individually to the Philipsons, avoidance of the Philipsons' lien, avoidance and recovery of fraudulent transfers made individually to the Philipsons, equitable subordination of the Philipsons' claim, and disallowance of the Philipsons' claim (the "Philipson Answer," ECF Adv. Pro. No. 6). On December 10, 2019, Philipson filed a Reply to Debtor's Affirmative Defenses and Counterclaims, therein raising affirmative defenses to Debtor's Counterclaims of new value, transfers beyond the preference period, and bad faith. (ECF Adv. Pro. No. 8.)

Given the present posture of the case, both the United States Trustee and Philipson request that the Court convert the case to a case under chapter 7 pursuant to § 1112(b)(1) for cause shown under § 1112(b)(4)(A).

IV.    *Arguments*

In some respects, the parties' arguments have been mooted out by events that have occurred as the case has progressed since the filing of the UST Motion. Namely, both Crossroads and Wachs Rome initially concentrated on the timing of the UST Motion and advocated against dismissal. Neither party has taken a position with respect to the Philipson Motion or the United States Trustee's request to convert post-liquidation. Of the parties that remain, their positions and arguments are straightforward.

In support of conversion, the United States Trustee argues that chapter 11 has done nothing to protect or advance Debtor's interests. Rather, contrary to the purposes of chapter 11, "[t]his case has only served to erode the cash position of the Debtor and create a new class of unsecured creditors." (UST Mot. 4.) Because Debtor is unable to rehabilitate its business, as is required by § 1112(b)(1), the United States Trustee contends that the plain language of § 1112(b) requires this Court to convert the case to a case under chapter 7. Further, the United States Trustee argues that Debtor's justification for remaining in chapter 11

in order to prosecute the chapter 5 avoidance claims is meritless. The United States Trustee submits that equality of distribution would best be served by conversion and the appointment of a chapter 7 trustee whose statutory purpose is to assess the interests of the estate in an impartial, fair manner and supervise the administration of the assets, including the chapter 5 avoidance claims, to recover maximum value for the estate. Generally, the United States Trustee asserts that "there has been nothing orderly or expeditious about this case." (UST's Reply to Debtor's Obj. 5). Rather, from its inception, Debtor has pursued every possible path towards reorganization, including borrowing and continuing to accumulate administrative expenses, which nevertheless resulted in the liquidation of its assets and closure of the business. According to the Accounting, the liquidation resulted in only $18,513.08 in sale proceeds for the estate. Presently, Debtor does not have funds to pay ongoing United States Trustee Quarterly Fees, agreed upon administrative liabilities related to its commercial lease rejections, anticipated litigation costs, professional fees, or costs for preparing, confirming, and/or administering a plan of reorganization or liquidation. Under these circumstances, the United States Trustee contends that it is now time for the Court to grant the UST Motion and convert the case.

Philipson's position mirrors that of the United States Trustee. Philipson likewise asserts that Debtor cannot rehabilitate as is contemplated by § 1112(b). Further, Philipson contends that even if Debtor could pursue post-confirmation litigation and obtain funding to prosecute the chapter 5 avoidance litigation through a litigation trust, the expenses of confirming a chapter 11 plan and the continuation of accumulating costs to remain in chapter 11 would be significantly higher than the cost of a chapter 7 case. Further, given that Debtor's financial disclosures and reporting throughout the case have been inaccurate, as pointed out by Devlin and conceded to by Debtor, Philipson argues that a chapter 7 trustee could independently review Debtor's finances and provide accuracy and transparency that has been lacking thus far. With respect to Debtor and the Committee's offer to cap professional fees in the amount of $50,000.00 through confirmation, as is so often the criticism in chapter 11 cases, Philipson asks the Court to disregard this consideration for the reason that significant professional fees in this case have already totaled more than

$893,998.11 through July 31, 2019, while secured creditors, administrative expense claimants, and unsecured creditors continue to wait for recovery.

In response, Debtor and the Committee ask this Court to follow a line of pre-Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") cases wherein bankruptcy courts assessed which chapter would better serve the interests of the creditors and the estate and, upon finding that chapter 11 would do so, permitted debtors-in-possession to remain in control of their businesses while liquidating under chapter 11. (Debtor's Obj. to the UST Mot. 6–7.) Debtor and the Committee counter the United States Trustee and Philipson's arguments by asserting that, even if the Court finds cause for conversion or dismissal exists under § 1112(b),[5] the Court should in its exercise of discretion deny the relief requested because a chapter 11 liquidating plan that would preserve avoidance actions for a post-confirmation fiduciary would best serve the interests of creditors and the estate. (Debtor's Obj. to the UST Mot. 2.)

According to Debtor and the Committee, in addition to the chapter 5 avoidance litigation against the Philipsons, there are potentially eighty-nine other preference targets. Further, they argue that the estate's remaining tasks of prosecuting these avoidance actions and the chapter 5 counterclaims pleaded against the Philipsons, and winding down the company, would be better handled by Debtor's professionals and less costly than if they were administered in chapter 7 trustee because Debtor's professionals have agreed to cap their professional fees in the amount of $50,000.00 through confirmation. (*Id.* at 2–3.) Notwithstanding the United States Trustee and Philipson's assertions to the contrary, Debtor contends that Viti remains very much involved in the case and committed to securing the greatest and most expedient recovery for creditors. Debtor asserts that this can be accomplished through a liquidating plan in chapter 11, which will be funded by a multi-million-dollar recovery in the chapter 5 avoidance litigation against the Philipsons. With respect to the Philipson Motion, Debtor asks the Court to recognize that it is nothing more than an attempt by Philipson to hinder Debtor's efforts in this regard.

---

[5] In the first instance, Debtor disputes that cause exists, primarily for the reasons that it is current with the filing of monthly operating reports, it has the ability to pay United States Trustee Fees via a $70,000.00 carveout held by Crossroads designated for that purpose, and it anticipates having the ability to fund a chapter 11 liquidating plan in the future.

*V.      Discussion*

Subject to certain exceptions set forth in § 1121(b)(1) and (2), § 1121(b)(1) provides that a court shall dismiss a case under chapter 11 or convert the case to one under chapter 7, whichever is in the best interests of the creditors and the estate, if the movant establishes "cause." 11 U.S.C. § 1121(b)(1). The moving party bears the burden of demonstrating cause by a preponderance of the evidence. *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) (citing *In re Loco Realty Corp.*, No. 09-11785 (AJG), 2009 Bankr. LEXIS 1724, at *5 (Bankr. S.D.N.Y. June 25, 2009)).

"The bankruptcy court has wide discretion to determine if cause exists and how to ultimately adjudicate the case." *In re 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) (citing *In re State St. Assocs., L.P.*, 348 B.R. 627, 638 (Bankr. N.D.N.Y. 2006)). Although the Bankruptcy Code does not define "cause" as that term is used in § 1112(b)(1), § 1112(b)(4) provides a nonexclusive list of what constitutes cause for dismissal or conversion. This includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

Following BAPCPA's amendment of § 1112(b)(1), once cause has been demonstrated under § 1112(b)(4)(A), however, the Court must either dismiss or convert a chapter 11 case. *In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("[I]t appears that Congress has purposefully limited the role of this Court in deciding issues of conversion and dismissal, such that this Court has no choice, and no discretion, in that it *'shall'* dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).") (emphasis in original); *accord In re Adamo*, Case No. 14-73640-las, 2016 Bankr. LEXIS 694, at *27–28 (Bankr. E.D.N.Y. Mar. 4, 2016) ("If cause is found to exist, and the Court determines that the limited exceptions do not apply, dismissal or conversion is mandatory—the Court must dismiss or convert the chapter 11 case.") (continuing to note that, if cause is found to exist, the Court's discretion is limited to the selection of the proper remedy between dismissal or conversion); *In re Gregory & Parker, Inc.*, Case No. 12-01382-8-SWH, 2013 Bankr. LEXIS 2104, at *11 (Bankr. E.D.N.C. May 23,

2013) ("Once 'cause' is established, conversion or dismissal is mandatory, unless an exception set out in § 1121(b)(1) applies.").[6]

Both the United States Trustee and Philipson recite and rely on § 1112(b)(4)(A) as cause for conversion. This subsection requires the movant to establish a two-prong showing:

> (1) whether after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or alternatively, declining asset value; and (2) whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time.

*Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 174 (B.A.P. 1st Cir. 2016) (quoting *In re Franco*, No. 10-09758 (ESL), 2012 Bankr. LEXIS 3254, at *7 (Bankr. D.P.R. July 27, 2012)). In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, in the absence of a cash infusion from third parties, the first prong will be satisfied because "any negative cash flow–including that resulting from only administrative expenses–effectively comes straight from the pockets of the creditors." *Loop Corp. v. United States Tr.*, 379 F.3d 511, (8th Cir. 2004). It is undisputed in this case that there have been substantial and continuing losses to and diminution of the estate, as evidenced by Debtor's financial statements, monthly operating reports, inability to pay administrative expenses associated with the wind-down of its affairs, completed liquidation, and store closings. Debtor's response that it is not accruing any additional material administrative expenses to wind-down its affairs, or that it's counsel has agreed to cap future legal fees at $50,000.00 through the confirmation date of a chapter 11 plan of liquidation–which is to be funded solely through litigation–do not negate this finding. *In re BH S&B Holdings, LLC*, 439 B.R. at 350 ("[C]ase law is clear that the mere hope

---

[6] The exception to conversion under § 1112(b)(2) where the bankruptcy court is able to find and specifically identify "unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors and the estate," 11 U.S.C. § 1112(b)(2), is inapplicable here because the United States Trustee and Philipson seek conversion based on the ground enumerated in § 1112(b)(4)(A). *See* 11 U.S.C. § 1112(b)(2)(B) (limiting the exception and requiring the debtor to make a certain showing in cases where "the grounds for converting or dismissing the case include an act of omission of the debtor *other than* under paragraph (4)(A) . . . .") (emphasis added); *In re Brutsche*, 476 B.R. 298, 306 (Bankr. D. N.M. 2012) ("The statute is explicit that the Court may not rely on unusual circumstances to refuse to convert or dismiss if it finds cause under § 1112(b)(4)(A).") (citing *In re ARS Analytical, LLC*, 433 B.R. 848, 865 n.25 (Bankr. D. N.M. 2010)).

of prevailing on potential litigation claims is not a sufficient basis to defeat a showing of cause to convert.") (citing *In re FRGR Managing Member, LLC*, 419 B.R. 576, 583 (Bankr. S.D.N.Y. 2009); *In re Ameribuild Const. Mgmt., Inc.*, 399 B.R. 129, 134 (Bankr. N.D.N.Y. 2009)). Debtor has no income and even a modest increase in liabilities satisfies the first prong.[7] Further, it is not enough for Debtor to have been current on its operating expenses since the store closing sales began or for minimal carveouts to remain accessible as "[a]ll that need be found is that the estate is suffering some diminution in value." *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988).

Section 1112(b)(4)(A) requires both a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A). Given the procedural posture of the case, the determinative question here is whether "rehabilitation" in the context of § 1112(b)(4)(A) includes a liquidating plan. Case law is clear that it does not. Courts have consistently held that rehabilitation refers to the debtor's ability to restore the viability of the business. *Loop Corp. v. United States Tr.*, 379 F.3d at 516 (collecting cases).

> The standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation.

7 Collier on Bankruptcy ¶ 1112.04[6][a][ii](internal footnotes and case citations omitted). The standard is not whether Debtor can ultimately fund a plan based entirely on speculative outcomes in pending litigation. *Id.* n.71 (citing *Quarles v. United States Trustee*, 194 B.R. 94, 97 (W.D. Va. 1996) (no likelihood of rehabilitation where debtor was losing money and only hope of reorganization depended entirely on

---

[7] Notably, Debtor recently settled and obtained Court approval for the payment of administrative expense claims related to post-petition commercial lease rejections corresponding with Debtor's three final store closings. On November 5, 2014, the Court issued an Order approving the Stipulation between Debtor and Nigro Companies ("Nigro"), wherein Nigro was awarded an allowed administrative claim in the amount of $84,667.52. (ECF No. 578.) On November 18, 2019, the Court issued an Order approving the Stipulation between Debtor and New Hartford Shopping Center Trust ("NHSCT"), wherein NHSCT was awarded an allowed administrative claim in the amount of $45,735.01. (ECF No. 594.) Finally, on November 19, 2019, the Court issued an Order approving the Stipulation between Debtor and GLP, LLC ("GLP"), wherein GLP was awarded an allowed administrative claim in the amount of $50,358.53. (ECF No. 599.)

speculative outcomes in pending litigation)). Rather, rehabilitation is a different and much more demanding standard than reorganization. *In re Brutsche*, 476 B.R. at 301. For purposes of § 1112(b)(4)(A), "'rehabilitation means to put back in good condition and reestablish on a sound basis.'" *In re BH S&B Holdings, LLC*, 439 B.R. at 347 (quoting *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003)).

The Court, therefore, finds that cause has been established by the United States Trustee and Philipson within the meaning of § 1112(b)(4)(A). Contrary to Debtor and the Committee's position, the Court is of the opinion that it must convert the case, without reaching the question of whether allowing Debtor to remain in chapter 11 would better serve the interests of creditors. The Court's discretion is much more restricted than Debtor or the Committee suggest in this instance.

*VI.    Conclusion*

Throughout this case, the Court has carefully considered the views of the Committee and appreciated the cooperation of the United States Trustee, lenders, Debtors' commercial landlords, and the Philipsons in providing Debtor with multiple opportunities to reorganize. Debtor's efforts were unsuccessful and it resulted in a liquidation rather than a reorganization proceeding. Just as the court in *Brutsche* concluded, this Court also concludes that "[h]aving found cause under § 1112(b)(4)(A), the Court cannot leave Debtor in control of the case." *In re Brutsche*, 476 B.R. at 308. Simply stated, the Court "does not have the ability to grant the debtor a reprieve from dismissal or conversion under the exception in Section 1112(b)(2)." *In re Acme Holding Co.*, No. 2:14-bk-71315, 2015 Bankr. LEXIS 2417, at *43 (Bankr. W.D. Ark., July 22, 2015) (citing *In re Plymouth Oil Co.*, No. 12-01403, 2014 Bankr. LEXIS 3278, at *5 (Bankr. N.D. Iowa, Aug. 1, 2014)). No party is requesting dismissal of the case for obvious reasons. Accordingly, the Court hereby grants the UST and Philipson Motions. The Court will therefore issue a separate order in conformity with this Memorandum-Decision and Order converting the case to one under chapter 7, which will allow for a chapter 7 trustee to marshal or abandon the estate's remaining assets and to prosecute any pending or potential litigation arising in connection with the estate.

Dated:  December 19, 2019
        Utica, New York

                                                /s/DIANE DAVIS
                                                Diane Davis
                                                United States Bankruptcy Court Judge